IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| **JANICE SCOTT**, | ) | |
| Plaintiff, | ) | CIVIL ACTION FILE |
| -vs- | ) | |
| | ) | NO.: **1:20-cv-04420-TWT** |
| THE CHARTER OAK FIRE | ) | |
| INSURANCE COMPANY, | ) | *Hon. Thomas W. Thrash, Jr., Judge* |
| Defendant. | ) | |

## PLAINTIFF'S INITIAL DISCLOSURES

**(1)  State precisely the classification of the cause of action being filed, a brief factual outline of the case including plaintiff's contentions as to what defendant did or failed to do, and a succinct statement of the legal issues in the case.**

This dispute between the parties to this action is wholly due to the failure of Defendant The Charter Oak Fire Insurance Company ("Charter Oak" or "Defendant") negligent and fraudulent claims handling of the legitimate claims of Plaintiff resulting from an incurred loss to her property under the subject policy on September 28, 2018 (the first covered loss due to burst pipes and mold/rot – 1st loss) and October 1-4, 2019 (the second and third covered losses due to burst pipes and mold/rot – 2nd loss and 3rd loss respectively).

At all times material hereto, Plaintiff was insured by Charter Oak (although Plaintiff was told she was buying insurance from Travelers and all correspondence for the claims was from Travelers – Plaintiff will attempt to uncover this "fraud" during discovery and reserves the right to reinstate Travelers if that fraud proven).

At all times material hereto, Charter Oak was acting by and through its duly authorized agents, servants, workmen, or employees acting within the course and scope of their employment and on the business of said employer.

Charter Oak, in its regular course of business issued to Plaintiff a policy of

insurance, policy # OJCP39-982221539-633-1 ("Plaintiff's Policy") covering Plaintiff's property located at 1590 Foote Street, NE, Atlanta, GA 30307 ("the Property"). A true and correct copy of the declarations page of said policy is attached hereto and incorporated herein as Exhibit "A".

Plaintiff's Policy contained "***Limited 'Fungi', Other Microbes Or Rot Remediation***" coverage. (When used herein, "mold/rot," "rot," "fungi," and "mold" will be referred to as "*mold/rot*").

This coverage provides, in part:

> ***16. Limited "Fungi", Other Microbes Or Rot Remediation.***
> ***a. If a loss caused by a Peril Insured Against results in "fungi", other microbes or rot, we will pay for:***
> ***(1) Remediation of the "fungi", other microbes or rot. This includes payment for the reasonable and necessary cost to:***
> ***1. remove the "fungi", other microbes or rot from covered property or to repair, restore or replace that property; and***
> ***2. Tear out and replace any part of the building as needed to gain access to the "fungi", other microbes or rot;***
> ***b. We will pay under this additional coverage only if:***
> ***1. The covered loss occurs during the policy period;***
> ***2. All reasonable means were used to save and preserve the property at the time of and after the covered loss; and***
> ***3. We receive prompt notice of the covered cause of loss that is alleged to have resulted in "fungi", other microbes or rot.***
> ***c. The most we will pay under this additional coverage is the limit of liability shown in the Declarations for Limited "Fungi", Other Microbes Or Rot Remediation. This is the most we will pay for the total of all loss or costs regardless of the:***
> ***1. Number of location or items of property insured under this policy; or***
> ***2. Number of losses or claims made.***
> ***d. This coverage does not increase the limit of liability that applies to the damaged property***.

(Emphasis Added)- [Georgia Endorsement #HO-828 (06-03) for Plaintiff's Policy #982221539 with Charter Oak (see attached and incorporated ***Exhibit #1***)]

Plaintiff paid additional premiums for this *special rider*/coverage and paid for the same timely and faithfully; and, because of Charter Oak's assurances and her contract/Policy with Charter Oak, Plaintiff expected to be fully covered by this rider.

On or about September 28, 2018, while Plaintiff's Policy was in full force and effect, Plaintiff suffered direct physical loss and damage to the insured Property as the result of a peril insured against under Plaintiff's Policy, specifically, escape of water from a burst pipe within the home's plumbing system, resulting in water and fungi, mold, and/or rot damage (hereinafter *mold/rot* damage) to the insured premises.

Then, again, on or about October 1-4, 2019, while Plaintiff's Policy was in full force and effect, Plaintiffs suffered a second and possibly a third direct physical loss and damage to the insured Property believed to be the result of a peril insured against under Plaintiff's Policy, specifically, escape of water from a second and third burst pipes (2nd loss and 3rd loss respectively) within her home's plumbing system, resulting in water and *mold/rot* damage to the insured premises.[1]

Both of the two separate, sudden releases of water from two burst pipe incidents within the home's plumbing system are a covered loss under Plaintiff's Policy (i.e., the water supply lines, drain lines, shower, shower pan, and associated plumbing) but Charter Oak refused to open a 2nd loss or 3rd loss claim for Plaintiff.

Notice of these covered losses were given to Charter Oak in a prompt and timely manner and Plaintiff, at all relevant times, fully complied with all of the terms and conditions required by Plaintiff's Policy. Charter Oak, however, illicitly refused to set up any other claims for the other distinct "burst-pipe" incident and only set up one claim for the September 28, 2018 burst-pipe incident under claim number H0L5871001H ("Claim").

Despite knowledge of the above-referenced "*mold/rot*" coverage, Charter

---

[1] These two additional burst pipes (2nd loss and 3rd loss) were discovered by Plaintiff's plumber inside the walls of her home on or about October 5, 2018. He opined that the leak was hidden and the water damage was extensive. The two burst pipes occurred almost simultaneously, thus, Plaintiff tried to combine them into one incident so as to be fair to Charter Oak - never expecting Defendant to violate their contract, its duty, or Georgia law.

Oak still denied these *mold/rot* losses.

Plaintiffs' rot-damage claims were ignored at all times relevant hereto by Charter Oak and, in order to deny same, Charter Oak simply referred to those damages as water damages and refused to address or remediate the severe *mold/rot* damages from the two covered incidents.

In fact, one of the settlement letters actually cited the language of Plaintiffs' Policy, yet, specifically and purposefully failed to include any rot-damages; indicating Charter Oak refused to pay Plaintiff for her covered water and *mold/rot* damages for either claim in bad faith and contrary to the additional rider (**Limited 'Fungi', Other Microbes Or Rot Remediation**) Plaintiff paid extra for the *mold/rot* endorsement and expected to be covered by Charter Oak for all *mold/rot* damages.

Despite knowledge of the above-referenced water and "*mold/rot*" coverage (see **Exhibit #2** the attached and incorporated February 5, 2019 appraisal estimate of Plaintiff's water *mold/rot* damages),Charter Oak still, to this day, has denied Plaintiff's legitimate *mold/rot* damage losses and most of her water damage losses (and her additional replacement cost protection for which she also paid Charter Oak).

Following these rot-coverage-claim denials and Charter Oak's "low balling," in which Charter Oak only paid about $5,000.00 for the damages to Plaintiff's home (with over $225,000.00 in damages[2]), Plaintiff was forced to hire counsel to assist the subject losses.

Counsel's numerous attempts to obtain a proper and just settlement for Plaintiff's covered losses were to no avail and Charter Oak continued to deny Plaintiff's legitimate claims (i.e., her water and mold/rot damage claims).

On or about June 24, 2019, over one year ago, Ralph J. Villani, Esq., Plaintiff's undersigned Counsel sent Charter Oak a proper and timely statutory 60-day demand letter (see **Exhibit #3** – attached and incorporated June 24, 2019 demand letter).

---

[2] See the attached and incorporated Estimate by Georgia General Contracting Consulting Company ("GGCCC") dated February 5, 2019 (**Exhibit #2**).

To date,Charter Oak still refuses to make Plaintiff whole for her three burst-pipe, water and *mold/rot* damage claims.

Charter Oak, despite demands for benefits under the Plaintiff's Policy, has refused, without legal justification or cause, and continues to refuse to pay to Plaintiff monies owed for the damages she suffered as a result of her water and *mold/rot* losses.

As a direct and factual result of the breach of contract, Plaintiff has been denied the benefits of her bargain with Charter Oak.

Solely as a result of Charter Oak's fraudulent and illicit failure and refusal to pay legitimate benefits to Plaintiffs as required under the Plaintiff's Policy, Plaintiff has suffered loss and damage in an amount in excess of **$227,229.44** (for both claims): plus attorney fees and costs, expert fees, punitive damages, bad faith damages, RICO damages, and pre-judgment and post-judgment interest.

## *CLAIMS*

Plaintiff has pleaded her following Claims ***in the alternative*** as allowed by Georgia law so that even if this Court denies her bad faith claims it can still send her *ex-contractual* claims to the jury (Plaintiff wants all of these claims to be presented to the jury: *bad faith* and *ex-contractual*).

## **COUNT I**
## ***BAD FAITH*[3]**

---

[3] O.C.G.A. § 33-4-6 (2010)
**33-4-6. Liability of insurer for damages and attorney's fees ...**
 (a)   *In the event of a loss which is covered by a policy of insurance and the refusal of the insurer to pay the same within 60 days after a demand has been made by the holder of the policy and a finding has been made that such refusal was in bad faith, the insurer shall be liable to pay such holder, in addition to the loss, not more than 50 percent of the liability of the insurer for the loss or $5,000.00, whichever is greater, and all reasonable attorney's fees for the prosecution of the action against the insurer.* ***The action for bad faith shall not be abated by payment after the 60 day period nor shall the testimony or opinion of an expert witness be the sole basis for a summary judgment or directed verdict on the issue of bad faith***. *The amount of any reasonable attorney's fees shall be determined by the trial jury and shall be included in any judgment which is rendered in the action; provided, however, the attorney's fees shall be fixed on the basis of competent expert evidence as*

Plaintiff timely and properly submitted her statutory O.C.G.A. § 33-4-6 sixty-day Demand Letter to Charter Oak through its agent/employee and said *Demand Letter* was submitted more than sixty (60) days from filing Plaintiff's law suit as required by Georgia law.

Charter Oak has engaged in bad faith conduct toward Plaintiff with respect to its wrongful delay in payment and/or refusal to fully indemnify Plaintiff for her two (2) legitimate claims in violation of said Policy and O.C.G.A. § 33-4-6.

Charter Oak's conduct (as shown here and as will be proved at the trial of this case) was motivated by financial self-interest and greed and was accomplished with reckless indifference to the rights of Plaintiff ("egregious acts").

Charter Oak's ***egregious acts*** give rise to a high level of statutory bad faith in Georgia, and they rise to the level of punitive damages.

For the reasons set forth above, Charter Oak has acted in bad faith and in violation of O.C.G.A. § 33-4-6, rendering Travelers liable for statutory damages including, *inter alia*, interest from the date the claim was made in an amount equal to the prime rate of interest plus 3%, court costs, attorney's fees, punitive damages, and such other compensatory and/or incidental damages as are permitted by law.

The practice of Charter Oak to deny legitimate claims, in interpreting the Policy, advertised as including insured's rights under Policies, to never apply such rights of Travelers's Policyholders to its claims handling procedures or claim investigations, solely for the financial advantage of Travelers and its greed, making Travelers also liable for punitive damages (Charter Oak has perpetrated this and very similar fraud upon its Policyholders for ten years, or so – see, i.e., *footnote #3*,

---

*to the reasonable value of the services based on the time spent and legal and factual issues involved in accordance with prevailing fees in the locality where the action is pending; provided, further, the trial court shall have the discretion, if it finds the jury verdict fixing attorney's fees to be greatly excessive or inadequate, to review and amend the portion of the verdict fixing attorney's fees without the necessity of disapproving the entire verdict. The limitations contained in this Code section in reference to the amount of attorney's fees are not controlling as to the fees which may be agreed upon by the [Plaintiffs] and the [Plaintiffs'] attorney for the services of the attorney in the action against the insurer.* (Emphasis Added) "O.C.G.A. 33-4-6 (2010)

*infra*).

Charter Oak has engaged in bad faith conduct toward Plaintiff and has treated Plaintiff unreasonably with respect to the payment of her legitimate claims relating to covered losses under subject Policy in violation of, in part, O.C.G.A. § 33-4-6.

As a result of Charter Oak's bad faith conduct, Plaintiff has been forced to commence the present litigation and has incurred and will incur expert fees, litigation costs, travel and lodging expenses (once permanent repairs are under way), and counsel fees (estimated to be over $5,000.00).

Charter Oak is liable to Plaintiff for any and all damages arising from its bad faith in this matter to the fullest extent allowed by Georgia law.

## COUNT II
### *ATTORNEY FEES and COSTS OF LITIGATION*
### *(O.C.G.A. § 13-6-11)*

Plaintiff has incurred/will incur attorney fees and other costs and unnecessary trouble and expense as a result of Charter Oak's stubborn litigiousness and Plaintiff seeks attorney fees pursuant to O.C.G.A. § 13-6-11 on the within referenced claims as permitted by law.

Specifically, Charter Oak has been stubbornly litigious– it has only delayed ... delayed ... delayed ... delayed ...

Charter Oak is liable to Plaintiff for reasonable attorney fees and costs of litigation.

## COUNT III
### *PUNITIVE DAMAGES*
### *(O.C.G.A. § 51-12-5.1)*

Due to its intentional torts and its **egregious acts**, Charter Oak has demonstrated willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to

consequences suffered by Plaintiff; therefore, Charter Oaks is liable to Plaintiff for punitive damages.

The intentional torts alleged against Charter Oak herein, and as proved at trial of this case, give rise to punitive damages against Defendant.

If proven at trial, Charter Oak's schemes and racketeering activities: at least two predicate acts, i.e., mail and wire fraud, fraudulent claims handling and/or investigations (see, i.e., *footnote #3*) as part of its scheme and enterprise to defraud Plaintiff and to deny her fair compensation for her legitimate losses are more than sufficient to make Charter Oak liable for punitive damages (nine times Plaintiff's total awards) for such intentional, ***egregious acts***.

Charter Oak is liable to Plaintiff for punitive damages due to its willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences suffered by Plaintiff in this case.

## COUNT IV
### *GA RICO*
### (*O.C.G.A. § 16-14-1, et seq.*)

Under Georgia law, Charter Oak is an enterprise and has committed at least two predicate acts against Plaintiff and has been engaged in similar racketeering activities and nefarious acts ("egregious acts") against its policyholders[4] for at least ten years and qualifies as an entity liable for RICO Damages in Georgia.

Charter Oak's within and foregoing egregious acts against Plaintiff make it liable to Plaintiff for RICO Damages, i.e., for treble damages. punitive damages, attorney fees, and costs.

## COUNT V
### *DIMINUTION OF VALUE*

---

[4] see, i.e., class action against Travelers, U.S. District Court, East District, PA, *Rose, et al., v. Travelers, et al.*, case # 2:19-cv-00977-GJP, from which Plaintiff has opted out of the multimillion dollar settlement in order to file her separate action against Charter Oak to include, in part, RICO, bad faith, punitive damages, and attorney fees and costs of litigation.

Because Charter Oak has failed to fully indemnify Plaintiff for her covered losses, Plaintiff has suffered additional damages and a diminution of value of at least $20,000.00 which Travelers refuses to even consider and/or properly investigate.

Therefore, for the within and foregoing reasons, Charter Oak is liable to Plaintiff for any and all diminution of Plaintiff's property.

### COUNT VI
### (*BREACH OF DUTY*)
### (U.S.C.A., O.C.G.A. § 51-1-6, and O.C.G.A. § 51–1–8)

The Unfair Claims Settlement Act (hereinafter "U.C.S.A.") sets forth a list of activities that insurance companies are statutorily prohibited from engaging in. O.C.G.A. § 33-6-34.

The U.C.S.A. creates a public duty to a general class of persons—the general public who have purchased insurance contracts and have made a claim to their insurance carriers—not to engage in the prohibited conduct.

The prohibitions of the U.C.S.A. do not appear anywhere in Plaintiffs' contract with Charter Oak — in other words these duties are "*ex contractu*" and independent of the contract and Plaintiff had the right to expect that Charter Oak would not violate its duties owed to the public (or her) by the U.C.S.A.; but, as shown herein, Charter Oak did just that.

Although O.C.G.A. § 33-36-7 provides that *"[n]othing contained in this article shall be construed to create or imply a private cause of action for a violation of this article"*, pursuant to O.C.G.A. § 51-1-6, an injured plaintiff falling within a statutorily protected class is authorized to recover damages for the breach of a legal duty, regardless of whether or not the statute by its "express terms" allows a cause of action.

> ***When the law requires a person to perform an act for the benefit of another or to refrain from doing an act which may injure another, although no cause of action is given in express terms, the injured party may recover for the breach of such legal duty if he suffers damage thereby.***

(Emphasis Added) O.C.G.A. § 51-1-6.[5]

In clarifying the application of O.C.G.A. § 51-1-6, The Court of Appeals has held that "[O.C.G.A. § 51–1–6] does not create a cause of action, of course; it simply authorizes the recovery of damages for a breach of a legal duty." City of Buford v. Ward, 212 Ga. App. 752, 755(3), 443 S.E.2d 279 (1994). The clear unambiguous language of O.C.G.A. § 51-1-6 allows Plaintiffs to recover their damages caused by Defendant's violation of the U.C.S.A. even though the U.C.S.A. expressly states there is no right of private action because the U.C.S.A. creates a public legal duty.

In addition, O.C.G.A. § 51-1-8 expressly states that a private right of action can be created by the violation of a statutory duty. The very purpose of both statutes is to allow injured Plaintiffs to recover for breaches of statutory duties where there exists no express right of remedy.

The issue of whether or not an injured member of a statutorily protected class has a private cause of action to recover damages for its violation where the express terms of the statute do not allow a private right is an issue of first impression. Project Control Services, Inc. v. Reynolds, 247 Ga. App. 889, 545 S.E.2d 593 Ga. App. (2001) (*it is not necessary for us to determine whether the Act provides a private right of action to recover damages for its violation. We recognize that such a determination would be an issue of first impression for this Court; however, we do not reach it because it is not necessary to the disposition of this case*).

However, the Court of Appeals has repeatedly held that a legal duty may be created through the violation of a statutory duty, especially when the injured person falls within the class of persons the statute was designed to protect. Stone Mountain Game Ranch, Inc. v. Hunt, 746 F.2d 761 (11th Cir. 1984); DaimlerChrysler Motors Company, LLC v. Clemente, 294 Ga. App. 38, 668 S.E.2d 737 (2008); R & R Insulation Services, Inc. v. Royal Indem. Co.,307 Ga. App. 419, 705 S.E.2d 223 Ga. App. (2010); McEachern v. Muldovan, 234 Ga. App. 152, 161, 505 S.E.2d 495 (1998), rev'd on other grounds 271 Ga. 805, 523 S.E.2d 566 (1999); Key v. Grant, 238 Ga. App. 818, 520 S.E.2d 277 (1999)(*physical precedent only*).

---

[5] See also O.C.G.A. § 51–1–8 that provides *"Private duties may arise from statute or from relations created by contract, express or implied. The violation of a private duty, accompanied by damage, shall give a right of action."*

Defendant has engaged in several instances of conduct that is in violation of the U.C.S.A.. Because Plaintiff is a member of the statutorily protected class of the U.C.S.A., Plaintiff has enumerated numerous violations of the act by Defendant causing her injury, and Plaintiff's injuries go beyond a mere breach of contract, therefore, under Georgia law, Plaintiff has a right to a full recovery of her damages.

The insurance industry has national and state standards with which they must comply in adjusting insurance claims and the failure to comply with these recognized standards is at least negligent, if not intentional. Moreover, the U.C.S.A. as stated above prohibits an insurance company from engaging in the very conduct that Charter Oak has engaged in with respect to handling Plaintiff's claims in this case. Thus "the law" creates a "legal duty" to Plaintiff not to engage in the prohibited conduct even though no such provisions are contained within the contract/Policy. Charter Oak's actions in violating the U.C.S.A. are at least negligent, if not intentional. Plaintiff relies upon both O.C.G.A. §§ 51-1-6 and 51-1-8 for the creation of this legal duty.

O.C.G.A. § 51–1–6 provides:"When the law requires a person to perform an act for the benefit of another or to refrain from doing an act which may injure another, although no cause of action is given in express terms, the injured party may recover for the breach of such legal duty if he suffers damage thereby."

O.C.G.A. § 51–1–8 provides: "Private duties may arise from **statute or** from relations created by **contract**, express or implied. The violation of a private duty, accompanied by damage, shall give a right of action."(Emphasis Added).

Plaintiff contends that Charter Oak was negligent in handling the investigation of her claims by 1) knowingly misrepresenting coverages; 2) failing to acknowledge with reasonable promptness pertinent communications with respect to claims arising under the policy; 3) failing to adopt and implement procedures for the prompt investigation and settlement of claims arising under its policies; 4) not attempting in good faith to effectuate prompt, fair, and equitable settlement of claims submitted in which liability has become reasonably clear; 5) compelling Plaintiff to institute a lawsuit to recover amounts due under its policies by offering substantially less than the amounts ultimately recovered in suits brought by Charter Oak's policyholders (i.e., see *footnote #3* above); and, 6) refusing to pay claims without conducting a reasonable investigation—all conduct for which Charter Oak owed a legal duty to Plaintiffs not to engage in.

Plaintiff further alleges that Defendant negligently hired, retained, supervised and/or trained the adjusters that handled her claim (as evidenced by their conduct in handling Plaintiff's claim) and Charter Oak failed to do anything about their adjusters' and claims supervisors' illicit claims handling especially in response to Plaintiff's complaints to Charter Oak, *ad nauseam*.

These injuries to Plaintiff are independent of damages from breach of contract mere failure to pay — she has suffered deprivation of use as a result of her claims dragging on unpaid for so long, costs in having to hire an attorney, experts, and filing this lawsuit. These damages are not recoverable by mere breach of contract claim. The breaches of the legal duties owed to Plaintiff are the cause of her damages.

Plaintiff contends that these breaches of legal duties owed to Plaintiff are intentional and tortuous, thus, Plaintiff is also entitled to punitive damages (RICO, also) for these breaches of legal duties.

Charter Oak is liable to Plaintiff for any and all damages for its breach of the aforesaid duties to Plaintiff.

## COUNT VIII
## (*FRAUD PART I*)
## (O.C.G.A. § 51-6-1 - Right of action for fraud accompanied by damage)

By way of handling thousands upon thousands of water damage claims, Charter Oak knew or should have known that "low-balling" Plaintiff's claims was an intentional tort (fraud).

At the very least, after these damages were discovered, repairs/remediation should have been done immediately by Charter Oak.

Now, it is too late, and repairs and *mold/rot* remediation on Plaintiff's home has not been initiated due to the negligence fraud of this Defendant (*albeit*, Plaintiff with severe health issues had to temporarily fix the damages and often do DIY mold/rot remediation when mold/rot contamination became visible).

Instead of informing Plaintiff of the truth, Charter Oak concealed the actual causes of the damages and lied to Plaintiff and Plaintiff's appraiser and told them the

damages were old water damage and/or slow leaks and **_NOT_** damages *mold/rot* from burst-pipe incident and that the leak damage was visible, so her claim was illicitly (and fraudulently/illegally) denied.

Charter Oak fraudulently minimized the nature and extent of the damages under facts and circumstances where Charter Oak, being an expert in the industry, knew or should have known that *mold/rot* was highly likely to develop without proper remediation efforts.

Once the mold was found, Plaintiff should not have been forced to stay in that home given her medical condition (Charter Oak should have offered to pay ALE expenses to Plaintiff as provided in subject Policy - but Defendant did not); that these types of structural damages can only get worse without proper repairs or replacement; and, these types of water and *mold/rot* damages must be properly addressed early in the claims process but, Charter Oak used every deceitful tactic in their play book to illicitly (and fraudulently/illegally) deny Plaintiff's legitimate claims.

Charter Oak is liable to Plaintiffs for any and all damages arising from this fraud.

## COUNT IX
## (*FRAUD PART II*)
## (O.C.G.A. § 51-6-2 - When misrepresentation of material fact is actionable as deceit and effect of mere concealment)

Once water, *mold/rot*, and structural damages were identified, Charter Oak knew or should have known that mold and rot were present throughout the house, there was a bulging and distortion of the dry walls and that full mold/rot remediation and proper water damage repairs should have been performed throughout the house **to prevent further mold/rot growth** and **structural damage** and that Plaintiff should have been told to vacate her home due to that *mold/rot* contamination (especially because of Plaintiff's medical condition).

Instead, Charter Oak denied any ALE and failed to indemnify Plaintiff hoping that Plaintiff would get frustrated and either take an additional low-ball amount and/or give up on her claims.

Charter Oak fraudulently minimized the nature and extent of the damages under facts and circumstances where Charter Oak, being an expert in the industry, knew or should have known that mold/rot was highly likely to develop without proper *mold/rot* remediation efforts. Once the mold and rot were found, Plaintiff should not have been staying in that home (Charter Oak should have offered to pay ALE expenses to Plaintiff as provided in subject Policy); that these types of structural damages can only get worse without proper repairs or replacement; and, these types of water damages must be properly addressed early in the claims process but, Charter Oak used every deceitful tactic in their play book to illicitly (and fraudulently and illegally) deny Plaintiff's legitimate claims.

Charter Oak fraudulently minimized the nature of the *mold/rot* contamination and fraudulently concealed the true extent of the *mold/rot* contamination and the true nature of the water damage due to "hidden running water" in the walls from Plaintiff (Travelers fraudulently used the bogus "*slow, over time, uncovered leak damages*" excuse) under facts and circumstances in this case where Charter Oak, being experts in the industry, knew or should have known that *mold/rot* was present and, highly likely, would develop further without proper *mold/rot* remediation efforts, that severe *mold/rot* contamination was found throughout the house (especially in the master bedroom and bathrooms) and was a danger to Plaintiff.

Charter Oak is liable to Plaintiffs for any and all damages arising from its egregious acts and its deceit (fraud).

**(2)  Describe in detail all statutes, codes, regulations, legal principles, standards and customs or usages, and illustrative case law which plaintiff contends are applicable to this action.**

See ¶ #1 above.

**(3)  Provide the name and, if known, the address and telephone number of each individual likely to have discoverable information that you may use to support your claims or defenses, unless solely for impeachment, identifying the subjects of the information. (Attach witness list to Initial Disclosures as Attachment A.)**

In lieu of providing an Attachment A, Plaintiff states as follows:

- Plaintiff and her counsel-of-record.
- Bruce Fredrics, owner of PACS, 289 Jonesboro Rd, Suite 436, McDonough, Georgia 30253; (480) 747-8413.
- Georgia General Contracting and Consulting, 289 Jonesboro Rd, Suite 436, McDonough, Georgia 30253.
- The *remediation company* Defendant hired and sent to Plaintiff's home to mitigate the water damages (which they failed to do).
- Defendant and its agents, employees, adjusters and counsel.

Plaintiff reserves the right to correct, supplement, or otherwise amend, his response as the above is not intended to or may not be complete and, during discovery, other witnesses may be ferreted out.

**(4) Provide the name of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence. For all experts described in Fed.R.Civ.P. 26(a)(2)(B), provide a separate written report satisfying the provisions of that rule. (Attach expert witness list and written reports to Responses to Initial Disclosures as Attachment B.)**

None hired to date for trial.

Plaintiff reserves the right to correct, supplement, or otherwise amend, his response as the above is not intended to or may not be complete and, during discovery, trial experts for the Parties may be determined and/or hired.

**(5) Provide a copy of, or a description by category and location of, all documents, data compilations or other electronically stored information, and tangible things in your possession, custody, or control that you may use to support your claims or defenses unless solely for impeachment, identifying the subjects of the information. (Attach document list and descriptions to Initial Disclosures as Attachment C.)**

In lieu of providing an Attachment C, Plaintiff states as follows:
- All emails and unprivileged correspondence between the Parties and/or with the Georgia Insurance and Fire Safety Commissioner.
- Estimates by the Parties.

- All documents and photographs prepared by or for the Parties relating to Plaintiff's claim whether required by subject Policy or not.
- Defendant's "claims files," "underwriting files," and "loss reserves file" for this and any other claims filed by or allegedly filed by Plaintiff with Defendant insurer.

Plaintiff reserves the right to correct, supplement, or otherwise amend, his response as the above is not intended to or may not be complete and, during discovery, other document, records, or intangible things may be ferreted out.

**(6) In the space provided below, provide a computation of any category of damages claimed by you. In addition, include a copy of, or describe by category and location of, the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of injuries suffered, making such documents or evidentiary material available for inspection and copying as under Fed.R.Civ.P. 34. (Attach any copies and descriptions to Initial Disclosures as Attachment D.)**

As enumerated in Plaintiff's Complaint, those damages will be determined by a fair and impartial Jury. However, Plaintiff demands judgment against Charter Oak for already-incurred and/or anticipated special damages of at least ***$7,000.00***, at least ***$90,000.00*** in compensatory and incidental damages, at least ***$20,000.00*** for diminution of the value of Plaintiff's property, reasonable attorney fees and costs of litigation, travel and lodging costs, (no less than ***$117,000.00*** in the aggregate), plus pre-judgment and post-judgment interest, punitive damages (i.e., ***nine (9) times*** any award to Plaintiff), Georgia RICO damages if uncovered during discovery (i.e., ***treble damages***), and *bad faith* damages as determined by a fair and impartial jury, and for such other relief as the Court may deem fair and just.

**(7) Attach for inspection and copying as under Fed.R.Civ.P. 34 any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in this action or to indemnify or reimburse for payments made to satisfy the judgment. (Attach copy of insurance agreement to Initial Disclosures as Attachment E.)**

Defendant has filed an alleged certified copy of the Policy, however, it contains additional restrictions and exclusions for which Plaintiff never bargained. Plaintiff hereby requests that this Court inquire into this "bait and switch" or obvious fraud by Charter Oak and require Defendant to file the real ***Certified copy of said Policy*** in effect at the time of occurrence (i.e., on or about July 14, 2019) and certification that said Policy was not tampered with and/or riders added or deleted and/or exclusions added after Plaintiff made her claim(s) and/or filed this law suit.

**(8)   Disclose the full name, address, and telephone number of all persons or legal entities who have a subrogation interest in the cause of action set forth in plaintiffs cause of action and state the basis and extent of such interest.**

None known to Plaintiff.

This 24th day of January, 2021.

/s/   *Ralph J. Villani*
Ralph J. Villani, Esq.
GA Bar No.: 727700

***VILLANI LAW FIRM***
821 Dawsonville Hwy.
Suite 250-333
Gainesville, GA 30501-2634

(TEL) 770.985.6773
(FAX) 770.979.5190

(Email) ralphjvillani@gmail.com          **Co-Counsel for Plaintiff**

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **JANICE SCOTT**, ) | |
|     Plaintiff, ) | CIVIL ACTION FILE |
| -vs- ) | |
| ) | NO.: **1:20-cv-04420-TWT** |
| THE CHARTER OAK FIRE ) | |
| INSURANCE COMPANY, ) | *Hon. Thomas W. Thrash, Jr., Judge* |
|     Defendant. ) | |

# COMBINED CERTIFICATE OF COMPLIANCE AND CERTIFICATE OF SERVICE

This is to certify that the within and forgoing document conforms to this Court's Local Rules and that the font used herein was Times New Roman 14 point.

This is to certify that I, this day, served opposing counsel with a true and correct copy of Plaintiff's ***Initial Disclosures*** through this Court's CM/ECF e-filing system.

This 24th day of January, 2020.

                /s/ *Ralph J. Villani*
                Ralph J. Villani, Esq.
                GA Bar No.: 727700

***VILLANI LAW FIRM***
821 Dawsonville Hwy.
Suite 250-333
Gainesville, GA 30501-2634

(TEL) 770.985.6773
(FAX) 770.979.5190

(Email) *ralphjvillani@gmail.com*

                **Co-Counsel for Plaintiff**