## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **JANICE SCOTT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL ACTION FILE NO.:** |
| | ) | **1:20-cv-4420-TWT** |
| **THE CHARTER OAK FIRE** | ) | |
| **INSURANCE COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## DEFENDANT'S STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE TO BE TRIED

Pursuant to Local Rule 56.1 of the Local Civil Rules for the United States District Court for the Northern District of Georgia, The Charter Oak Fire Insurance Company, ("Charter Oak"), Defendant in the above-styled action, files this Statement of Material Facts as to Which There is No Genuine Issue to be Tried:

1.

Charter Oak issued Plaintiff a policy of insurance, number OJCP39-982221539-633-1 ("the Policy"), providing certain coverage for the dwelling and personal property located at 1590 Foote Street NE, Atlanta, GA 30307 ("the Property").[Doc. 1-1, ¶ 6'; Doc. 26, ¶ 6].

2.

The Policy was in effect at the time of a water and mold damage loss that occurred at the Property on or about September 28, 2018 (the "Loss"). [Doc. 27– 2; Doc. 1-1, ¶ 10; Doc. 26, ¶ 10].

3.

Plaintiff filed an insurance claim with Charter Oak seeking coverage pursuant to the Policy for certain damages to the Property related to the Loss. [Doc. 1-1, ¶ 13; Doc. 26, ¶ 13].

4.

After Plaintiff provide notice of the Loss, Charter Oak's claims representative Jeffrey Teitelbaum ("Teitelbaum") inspected the Property on or about October 4, 2018. (Exh. A – Transcript of Scott Depo, P. 60, L. 9-17, P. 87, L. 13-15, P. 128, L. 1-3; Exh. C – Teitelbaum Aff., ¶s 3-4).

5.

At the inspection, Teitelbaum observed damages in the bathroom, utility closet, and mold in the crawl space as well as under the toilet that appeared to be long term. (Exh. C – Teitelbaum Aff., ¶ 4).

6.

Following the inspection, Teitelbaum sent a letter to Plaintiff dated October 12, 2018 advising her that Charter Oak had researched her claim, that in their opinion the Loss was long term, continuous, or repeated seepage or leakage of water, and therefore was not covered under the Policy. (Exh. A – Transcript of Scott Depo, P. 134-135, L. 21-25, 1 and Exh. 2 attached thereto; Exh. C – Teitelbaum Aff., ¶ 5 and Exh. 1 attached thereto).

7.

On October 15, 2018, Plaintiff spoke with Craig Hite ("Hite") from Charter Oak. (Exh. A – Transcript of Scott Depo, P. 77, L. 9-16, P. 89-90, L. 23-25, 1, P. 135, L. 2-6; Exh. B – Hite Aff., ¶ 5).

8.

During the phone call with Plaintiff on or about October 15, 2018, Plaintiff disagreed with the coverage denial. (Exh. B – Hite Aff., ¶ 6).

9.

During his phone call with Plaintiff, Hite explained that he agreed with the denial decision but offered to have the Property reinspected in order that Charter

Oak could reevaluate its coverage decision. (Exh. A – Transcript of Scott Depo, P. 77, L. 9-16, P. 89-90, L. 23-25, 1; Exh. B – Hite Aff., ¶ 7).

10.

Representatives from Emergency Water & Fire Restorations, Inc. ("EWFR") inspected the Property on or about October 16, 2018. (Exh. A – Transcript of Scott Depo, P. 77, L. 1-4, P. 78, L. 2-5; Exh. C, Teitelbaum Aff., ¶ 6).

11.

EWFR provided a report on October 13, 2018, in which its representatives indicated their belief that the Loss was not long term but that some previous damage to the particle board subfloor was exacerbated when the pipe burst in late September. (Exh. C – Teitelbaum Aff., ¶ 6).

12.

After receiving the report from EWFR Charter Oak spoke with Plaintiff on or about October 30, 2018 to advise that she would be provided coverage based on EWFR's findings. (Exh. C – Teitelbaum Aff., ¶ 6).

13.

Charter Oak sent Plaintiff a letter dated November 9, 2018 stating that coverage would be provided in the amount of $5,178.61. (Exh. A – Transcript of

Scott Depo, P. 90, L. 2-8, P. 97, L. 18-23; Exh. C – Teitelbaum Aff., ¶ 7 and Exh. 2 attached thereto).

14.

On November 28, 2018 Charter Oak received a $26,665.54 estimate from ServPro of North Atlanta Buckhead, hired by Plaintiff for mold remediation and demolition work to the Property. (Exh. C – Teitelbaum Aff., ¶ 8).

15.

Due to the large discrepancy between Charter Oak's estimate and ServPro's estimate, Teitelbaum and Justin Barber from Charter Oak inspected the Property with Plaintiff on November 30, 2018. (Exh. A – Transcript of Scott Depo, P. 88, L. 20-25, P. 139, L. 2-8; Exh. C – Teitelbaum Aff., ¶ 9).

16.

Based on Teitelbaum and Barber's observations during the inspection, Charter Oak determined that leak was long term and therefore further coverage would not be provided under the Policy. (Exh. C – Teitelbaum Aff., ¶ 10).

17.

Charter Oak sent a letter to Plaintiff dated December 13, 2018 honoring the prior estimate in the amount of $5,178.66 but denying further coverage. (Exh. A –

Transcript of Scott Depo, P. 74, L. 12-20; Exh. C – Teitelbaum Aff., ¶ 10 and Exh. 3 attached thereto).

18.

Plaintiff hired Bruce Fredrics ("Fredrics"), a public adjuster, to provide a repair estimate for the Property for Charter Oak to compare with because she did not believe that she could repair the damage without more money. (Exh. A – Transcript of Scott Depo, P. 99, L. 1-7, 22-25 and Exh. 1, P. 1 attached thereto).

19.

On or about January 8, 2019, Fredrics, Plaintiff's appraiser contacted Charter Oak advising that Plaintiff retained him and that she was demanding an appraisal because the parties had not agreed on an "Amount of Loss." (Exh. C – Teitelbaum Aff., ¶ 11).

20.

Charter Oak requested that Fredrics provide an estimate for the scope of work Plaintiff was asking to be covered if Plaintiff claimed there was a discrepancy in the amount needed for the covered damages. (Exh. C – Teitelbaum Aff., ¶ 12).

21.

On January 28, 2018, Charter Oak responded to Fredrics' demand for appraisal. Charter Oak stated that appraisal was premature because there was no dispute as to the cost to repair the damage included in Charter Oak's estimate. Without an estimate as to the cost to repair the covered damage, Charter Oak could not evaluate if a dispute did exist as to repairing the damage. (Exh. C – Teitelbaum Aff., ¶s 12 - 13 and Exh. 4 attached thereto).

22.

On or about February 5, 2019, Fredrics submitted an estimate to Charter Oak from an inspection that occurred on January 2, 2019 stating that cost to repair the loss damage was $118,637.13. (Exh. C – Teitelbaum Aff., ¶ 14 and Exh. 5 attached thereto).

23.

To assist in evaluating the discrepancy between the estimates, Charter Oak retained Michael Cannon ("Cannon"), a senior industrial hygienist with Forcon International, to investigate the number of water leaks, the source of the water leaks, and the cause of the water/mold damage to the Property. (Exh. C – Teitelbaum Aff., ¶ 15; Exh. D – Cannon Aff., ¶ 3).

24.

Cannon was an independent consultant who had never worked with Teitelbaum. (Exh. C – Teitelbaum Aff., ¶ 16; Exh. D – Cannon Aff., ¶ 4).

25.

Cannon inspected the Property on March 5, 2018. (Exh. D – Cannon Aff., ¶ 6 and Exh. B attached thereto).

26.

Cannon issued a report detailing his findings, a copy of which was provided to Plaintiff. (Exh. D – Cannon Aff., ¶ 5 and Exh. B attached thereto; [Doc 27 - 2]).

27.

During his inspection, Cannon observed that the Property was in poor condition. He observed a repair from a leak in the water supply line that served the icemaker, the bathroom vanity sink, and the bathroom toilet. The leak appeared to cause water damage to the drywall behind the refrigerator and associated wall framing. Corrosion on the nail plates indicated that the water leak was long term. (Exh. D – Cannon Aff., ¶s 6, 7, 8, 9 and Exh. B attached thereto).

28.

Cannon observed a repair to the water supply line/fitting to the toilet water valve that resulted in mold growth on the drywall inside the wall cavity above the leak, along the baseboard in the bathroom behind the toilet, and mold growth on the subfloor in the crawl space below. The failure of the subfloor behind and to the sides of the toilet indicated that this leak was long term. (Exh. D – Cannon Aff., ¶s 10, 11 and Exh. B attached thereto).

29.

Cannon observed that there had been repairs to the plumbing related to the hot water heater and bathtub. There was visible scattered dark mold growth on the drywall in the back right corner of the hot water heater closet that was likely caused by the previous leaks that had been repaired. The water damage and mold growth observed underneath the hot water closet suggested that the leaks from this area of the Property had migrated along the subfloor into the adjacent master bedroom, indicating that these leaks were long term. (Exh. D – Cannon Aff., ¶s 12, 13 and Exh. B attached thereto).

30.

Cannon opined in his report that "the overall conditions observed on the subfloor and floor joists from the crawl space beneath the bathroom, kitchen, and hot water heater closet would be indicative of long term, repeated water damage from the plumbing leaks identified." (Exh. D – Cannon Aff., ¶ 14 and Exh. B attached thereto).

31.

Furthermore, Cannon observed that although not related to plumbing leaks, there was evidence that rainwater was infiltrating in and around the side entry door to the kitchen. Wood rot on the door frame molding and rust on the interior side of the metal door's base indicate years of exposure to rainwater. (Exh. D – Cannon Aff., ¶s 15, 16 and Exh. B attached thereto).

32.

Based on these observations and Cannon's professional expertise as a senior industrial hygienist, he opined that the failure of the original polybutylene plumbing over a period of months resulted in the water and mold damage claimed by Plaintiff. (Exh. D – Cannon Aff., ¶ 17 and Exh. B attached thereto).

33.

The Policy contains the following provision regarding water damage:

**SECTION I – PERILS INSURED AGAINST**

**COVERAGE A DWELLING AND – COVERAGE B OTHER STRUCTURES**
We ensure against risks of direct physical loss to property described in **COVERAGE A and B, EXCEPT**:

C.    WE DO NOT COVER:
    6.    CONTINUOUS OR REPEATED SEEPAGE OR LEAKAGE OF WATER OR STEAM OVER A PERIOD OF TIME, WEEKS, MONTHS OR YEARS, FROM WITHIN A PLUMBING, DRAINAGE, HEATING, AIR CONDITIONING SYSTEM OR AUTOMATIC FIRE PROTECTIVE SPRINKLER SYSTEM OR FROM WITHIN A HOUSEHOLD APPLIANCE.

*****

[Doc. 27 – 2].

34.

After reviewing Cannon's report, and in conjunction with the rest of its investigation, Teitelbaum determined the Policy did not provide coverage for the Loss because the damage was long term throughout many portions of the Property, which was excluded under the terms of the Policy. Charter Oak sent Plaintiff a

letter explaining the denial of coverage dated March 26, 2019. (the "Denial Letter").  (Exh. C – Teitelbaum Aff., ¶s 17, 18 and Exh. 6 attached thereto).

35.

On June 24, 2019, Plaintiff through her attorney sent Charter Oak a 60-day bad faith demand letter pursuant to O.C.G.A. § 33-4-6. (Exh. C – Teitelbaum Aff., ¶ 19); [Doc. 23-3].

36.

Plaintiff failed to disclose the name(s) of any expert witness hired to provide testimony as to whether the Property suffered diminution in value during Plaintiff's initial disclosures or at any time during the standard as well as extended discovery period. [Doc 28, ¶ 4].

37.

Plaintiff only reported the damage occurred from a single loss. (Exh. C, Teitelbaum Aff., ¶ 3).

38.

Fredrics only referenced one loss in his estimate (Exh. 5 attached to Exh. C, Teitelbaum Aff.).

39.

Plaintiff, through her attorney, alleges in the Complaint there were two or more losses. [Doc. 1-1, P. 6, ¶s 10-11].

40.

At Plaintiff's deposition, she admitted that the damage she initial reported involved "running water" and that sound continued until a pipe was repaired on October 5. (Exh. A, Transcript of Scott Depo, P., 64, L. 13-19; P. 119, L 11-15; P. 131, L. 1-25; P. 132, L. 1-2)

Submitted this 27th day of October, 2021.

DREW, ECKL & FARNHAM, LLP

*/s/ Karen K. Karabinos*
Karen K. Karabinos
Georgia Bar No. 423906

*/s/ Mary Alice Jasperse*
Mary Alice L. Jasperse
Georgia Bar No. 971077

303 Peachtree Street NE
Suite 3500
Atlanta, GA 30308
Phone: (404) 885-1400
Fax: (404) 876-0992
karabinosk@deflaw.com
jaspersem@deflaw.com

*Counsel for Charter Oak*

13

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have this date served a copy of **DEFENDANT THE CHARTER OAK INSURANCE COMPANY'S STATEMENT OF MATERIAL FACTS** by filing it electronically with the Clerk of Court which will send notification of such filing to the below registered counsel electronically:

**Alexander Gray Hait**
**North Metro Litigators**
**185 Stockwood Drive, Suite 100**
**Woodstock, GA 30188**

**Ralph J. Villani**
**Villani Law Firm**
**821 Dawsonville Hwy, Suite 250-333**
**Gainesville, GA 30501-263**

This 27th day of October  2021.

DREW, ECKL & FARNHAM, LLP

*/s/ Karen K. Karabinos*
Karen K. Karabinos
Georgia Bar No. 423906

*/s/ Mary Alice L. Jasperse*
Mary Alice L. Jasperse
Georgia Bar No. 971077

303 Peachtree Street NE
Suite 3500
Atlanta, GA  30308
Phone: (404) 885-1400
Fax: (404) 876-0992

*Counsel for Charter Oak*

14