IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JANICE SCOTT, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| vs. | ) CIVIL ACTION FILE NO.: |
| | ) <u>1:20-cv-4420-TWT</u> |
| THE CHARTER OAK FIRE | ) |
| INSURANCE COMPANY, | ) |
| | ) |
|    Defendant. | ) |

**<u>BRIEF IN SUPPORT OF DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT</u>**

COMES NOW The Charter Oak Fire Insurance Company ("Charter Oak"), Defendant in the above-styled action, and, pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1 of the Civil Local Rules of Practice for the United States District Court for the Northern District of Georgia, files this Memorandum of Law in Support of its Motion for Summary Judgment and shows this Honorable Court the following:

**<u>STATEMENT OF THE CASE</u>**

Plaintiff filed this action against Charter Oak alleging: (Count I) statutory bad faith pursuant to O.C.G.A. § 33-4-6, (Count II) recovery of attorney's fees and

1

expenses of litigation claiming Charter Oak has been stubbornly litigious, (Count III) punitive damages, (Count IV) RICO damages, (Count V) diminution of value damages, (Count VI) breach of duty pursuant to O.C.G.A § 51-1-6 and §51-1-8, (Count VIII) fraud under O.C.G.A. § 51-6-1, (Count IX) and fraud under O.C.G.A § 51-6-2. [Doc 1-1]. This Court entered an Order granting Charter Oak's Motion for Judgment on the Pleadings and dismissing Counts II, III, IV, VI, VIII, and IX, therefore all that remains before this Court are Counts I and V. [Doc 38].

Based on law and undisputed material facts, Charter Oak is entitled to judgment as a matter of law as to Plaintiff's remaining claims asserted against Charter Oak for statutory bad faith and contractual damages for diminution in value.

## STATEMENT OF THE FACTS

Charter Oak issued Plaintiff a policy of insurance, number OJCP39-982221539-633-1 ("the Policy"), providing certain coverage for the dwelling and personal property located at 1590 Foote Street NE, Atlanta, GA 30307 ("the Property"). [Doc. 1-1, ¶ 6; Doc. 26, ¶ 6]. The Policy was in effect at the time Plaintiff reported to Charter Oak that there was certain water and mold damage that occurred at the Property on or about September 28, 2018 (the "Loss"). [Doc. 17-2 -

– the Policy; Doc. 1-1, ¶ 10; Doc. 26, ¶ 10]. Plaintiff sought coverage under the Policy for those damages. [Doc. 1-1, ¶ 13; Doc. 26, ¶ 13].

After Plaintiff provided notice of the Loss[1], Charter Oak's claims representative Jeffrey Teitelbaum ("Teitelbaum") inspected the Property on October 4, 2018. (Exh. A – Transcript of Scott Depo, P. 60, L. 9-17, P. 87, L. 13-15, P. 128, L. 1-3; Exh. C – Teitelbaum Aff., ¶s 3-4). At the inspection, Teitelbaum observed damages in the bathroom, utility closet, and mold in the crawl space. He also observed a leak under the toilet that appeared to be long-term leak. (Exh. C – Teitelbaum Aff., ¶ 4). Following the inspection, Teitelbaum advised Plaintiff that there was no coverage under the Policy as the damage was caused by a long term, continuous, or repeated seepage or leakage. (Exh. A – Transcript of Scott Depo, P. 134-135, L. 21-25, 1 and Exh. 2 attached thereto; Exh. C – Teitelbaum Aff., ¶ 5 and Exh. 1 attached thereto).

Following the denial, Plaintiff spoke with Craig Hite ("Hite") from Charter Oak on October 15, 2018. (Exh. A – Transcript of Scott Depo, P. 77, L. 9-16, P.

---

[1] Although Plaintiff reported the damage occurred from a single loss ((Exh. C, Teitelbaum Aff., ¶ 3). and her public adjuster/appraiser only referenced one loss in his estimate (Exh. 5 attached to Exh. C, Teitelbaum Aff.), Plaintiff, through her attorney, alleges in the Complaint there were two or more losses. [Doc. 1-1, P. 6, ¶s 10-11]. At Plaintiff's deposition, she admitted that the damage she initial reported involved "running water" and that sound continued until a pipe was repaired on October 5, 2018. (Exh. A, Transcript of Scott Depo, P, 64, L. 13-19; P. 119, L 11-15; P. 131, L. 1-25; P. 132, L. 1-2). Therefore, there was only one Loss.

89-90, L. 23-25, 1, P. 135, L. 2-6; Exh. B – Hite Aff., ¶ 5). Plaintiff advised Hite that she disagreed with the coverage denial. (Exh. B – Hite Aff., Aff., ¶ 6). While Hite agreed with the denial, he offered to have the Property reinspected and an expert opinion provided. (Exh. A – Transcript of Scott Depo, P. 77, L. 9-16, P. 89-90, L. 23-25; Exh. B – Hite Aff., ¶ 7).

At Charter Oak's request, representatives of Emergency Water & Fire Restorations, Inc. ("EWFR") inspected the Property on October 16, 2018. (Exh. A – Transcript of Scott Depo, P. 77, L. 1-4, P. 78, L. 2-5; Exh. C, Teitelbaum Aff., ¶ 6). EWFR issued a report on October 18, 2018 in which its representatives believed that that the Loss did not involve a long-term leak, but that some previous damage to the particle board subfloor was exacerbated when the pipe burst in late September. (Exh. C – Teitelbaum Aff., ¶ 6). After receiving the report from EWFR, Teitelbaum spoke with Plaintiff on October 30, 2018 advising that she would be provided certain coverage based on EWFR's findings. (Exh. C – Teitelbaum Aff., ¶ 6). Charter Oak sent Plaintiff a letter dated November 9, 2018 explaining the coverage of certain damages in the amount of $5,178.61. (Exh. A – Transcript of Scott Depo, P. 90, L. 2-8, P. 97, L. 18-23; Exh. C – Teitelbaum Aff., ¶ 7 and Exh. 2 attached thereto).

On November 28, 2018, Charter Oak received a $26,665.54 estimate from ServPro of North Atlanta Buckhead, retained by Plaintiff, for mold remediation and demolition work at the Property. (Exh. C – Teitelbaum Aff., ¶ 8). Due to the large discrepancy between Charter Oak's estimate and ServPro's estimate, Teitelbaum and his manager Justin Barber inspected the Property with Plaintiff on November 30, 2018. (Exh. A – Transcript of Scott Depo, P. 88, L. 20-25, P. 139, L. 2-8; Exh. C – Teitelbaum Aff., ¶ 9). Based on their observations, Charter Oak determined that the Loss was the result of a long-term leak and therefore further coverage would not be provided under the policy. (Exh. C – Teitelbaum Aff., ¶ 10). Charter Oak sent a letter, dated December 13, 2018, to Plaintiff advising her that the prior estimate in the amount of $5,178.66 would be honored, however, any further coverage would be denied. (Exh. A – Transcript of Scott Depo, P. 74, L. 12-20; Exh. C – Teitelbaum Aff., ¶ 10 and Exh. 3 attached thereto).

In response to that coverage decision, Plaintiff hired Bruce Fredrics ("Fredrics"), a public adjuster, to provide a repair estimate to compare to Charter Oak's estimate. (Exh. A – Transcript of Scott Depo, P. 99, L. 1-7, 22-25 and Exh. 1, P. 1 attached thereto). On January 8, 2019, Fredrics contacted Charter Oak advising that Plaintiff retained him and that she was demanding an appraisal

because the parties had not agreed on an "Amount of Loss." (Exh. C – Teitelbaum Aff., ¶ 11). Charter Oak responded to the demand for appraisal advising appraisal was premature because there was no dispute as to the cost to repair the damage included in Charter Oak's estimate. (Exh. C - Teitelbaum Aff., ¶ 12 and Exh. 4 attached thereto). Charter Oak requested that Fredrics provide an estimate for the scope of work his client wanted covered if Plaintiff claimed there was a discrepancy in the amount needed for the covered damages. (Exh. C – Teitelbaum Aff., ¶ 12). Without an estimate as to the cost to repair the covered damage, Charter Oak could not evaluate if a dispute did exist as to repairing the damage. (Exh. C - Teitelbaum Aff., ¶ 13). On February 5, 2019, Fredrics submitted an estimate representing the cost to repair the damage was $118,637.13. (Exh. C - Teitelbaum Aff., ¶ 14and Exh. 5 attached thereto).

To assist in evaluating the discrepancy between the estimates, Charter Oak retained Michael Cannon, a senior industrial hygienist with Forcon International, to investigate the number of water leaks, the source of the water leaks, and the cause of the water/mold damage to the Property. (Exh. C – Teitelbaum Aff., ¶ 15; Exh. D – Cannon Aff., ¶ 3). Cannon, an independent consultant, had never worked with Teitelbaum. (Exh. C – Teitelbaum Aff., ¶ 16; Exh. D – Cannon Aff., ¶ 4).

Cannon inspected the Property on March 5, 2018. He found that the Property was in poor condition. He observed a repair from a leak in the water supply line that serviced the icemaker, the bathroom vanity sink, and the bathroom toilet. Cannon also found that the leak appeared to cause water damage to the drywall behind the refrigerator and associated wall framing. Based on the corrosion on the nail plates, Cannon determined that the water leak was a long-term leak. (Exh. D – Cannon Aff., ¶s 6-9 and Exh. B attached thereto).

Additionally, he observed an repair to the water supply line/fitting to the toilet water valve that resulted in mold growth on the drywall inside the wall cavity above the leak, along the baseboard in the bathroom behind the toilet, and mold growth on the subfloor in the crawl space below. The failure of the subfloor behind and to the sides of the toilet indicated that this leak was long term. (Exh. D – Cannon Aff., ¶s 10-12 and Exh. B attached thereto).

Moreover, he observed that there had been repairs to the plumbing related to the hot water heater and bathtub. There was visible scattered dark mold growth on the drywall in the back right corner of the hot water heater closet that was likely caused by the previous leaks that had been repaired. The water damage and mold growth observed underneath the hot water closet suggested that the leaks from this

area of the Property had migrated along the subfloor into the adjacent master bedroom, indicating that these leaks were long term. (Exh. D – Cannon Aff., ¶s 12-13 and Exh. B attached thereto).

Cannon issued a report detailing his findings, a copy of which was provided to Plaintiff. (Exh. C – Teitelbaum Aff., ¶ 18; Exh. D – Cannon Aff., ¶ 6and Exh. B attached thereto.). He opined that "the overall conditions observed on the subfloor and floor joists from the crawl space beneath the bathroom, kitchen, and hot water heater closet would be indicative of long term, repeated water damage from the plumbing leaks identified." (Exh. D – Cannon Aff., ¶s 14-16 and Exh. B attached thereto).

Based on these observations and Mr. Cannon's professional expertise as a senior industrial hygienist, he opined that the failure of the original polybutylene plumbing over a period of months resulted in the water and mold damage claimed by Plaintiff. (Exhibit D – Cannon Aff. ¶ 17 and Exh. B attached thereto).

After reviewing Cannon's report, and in conjunction with the rest of Charter Oak's investigation, Teitelbaum determined the Policy did not provide coverage for the Loss after all because the damage was a result of long term leaks throughout many portions of the Property, which was excluded under the terms of

the Policy. Charter Oak sent Plaintiff a letter explaining the denial of coverage dated March 26, 2019, based on the following language in the Policy excluding coverage for continuous or repeated seepage or leakage:

**SECTION I – PERILS INSURED AGAINST**

**COVERAGE A DWELLING AND – COVERAGE B OTHER STRUCTURES**
We ensure against risks of direct physical loss to property described in **COVERAGE A and B, EXCEPT**:

C.  WE DO NOT COVER:
  6.  CONTINUOUS OR REPEATED SEEPAGE OR LEAKAGE OF WATER OR STEAM OVER A PERIOD OF TIME, WEEKS, MONTHS OR YEARS, FROM WITHIN A PLUMBING, DRAINAGE, HEATING, AIR CONDITIONING SYSTEM OR AUTOMATIC FIRE PROTECTIVE SPRINKLER SYSTEM OR FROM WITHIN A HOUSEHOLD APPLIANCE.

*****

(Exh. C – Teitelbaum Aff., ¶ 18 and Exh. 6 attached thereto); [Doc. 27-2 – Policy].

On June 24, 2019, Plaintiff through her attorney sent Charter Oak a 60-day bad faith demand letter pursuant to O.C.G.A. § 33-4-6. (Exh. C – Teitelbaum Aff, ¶ 20); [Doc. 28-3].

On September 22, 2020, Plaintiff filed suit against Charter Oak, which Charter Oak timely removed. This Motion for Summary Judgment addresses the

two remaining claims asserted against Charter Oak: Count I (statutory bad faith) and Count V (diminution of value damages).

## ARGUMENT AND CITATION OF AUTHORITY

### A. Standard for Granting Summary Judgment.

A motion for summary judgment must be granted if, ". . . [T]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, showed that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law . . ." Fed.R.Civ.P. 56(c). Charter Oak thus has the burden to show that there is no genuine issue of material fact. Celotex Corp v. Catrett, 477 U.S. 317, 323-24 (1986). To meet this burden, Charter Oak may point the court to "affirmative evidence demonstrating that [Plaintiff] will be unable to prove [its] case at trial." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1116 (11th Cir. 1993)(citation and footnote omitted).

In the alternative, Charter Oak can show that there is an absence of evidence to support the Plaintiff's position. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). This is because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all facts immaterial." Celotex, *supra* at 323. Charter Oak is not required to come forward

with evidence negating Plaintiff's claim, but once Charter Oak meets its burden, the burden shifts to the Plaintiff. Id. To avoid dismissal, the non-moving party must establish the existence of a material issue of fact. Clark, supra at 608. (1999).

Applying this standard to the undisputed material facts in this case as further set forth below, no genuine issues of material fact remain that Charter Oak is entitled to judgment as a matter of law.

**B. Plaintiff Cannot Recover Bad Faith Damages Under Count I Because it is Undisputed that Charter Oak Denial of Coverage was Based on a Reasonable Interpretation of the Policy and on the Opinions of an Independent Expert.**

Plaintiff's claim for bad faith must fail because the evidence is undisputed that Charter Oak denied coverage for Plaintiff's Loss based on a reasonable interpretation of the Policy provisions and the opinion of its independent expert. In Georgia, the mere fact that an insurer has not paid a claim is "not evidence of bad faith, nor is any burden thereby cast on the insurer to prove good faith." Interstate Life, etc., Ins. Co. v. Williamson, 220 Ga. 323, 326, 138 S.E.2d 668 (1964).

"Ordinarily, the question of good or bad faith is for the jury, but when there is no evidence of unfounded reason for the nonpayment, or if the issue of liability is close, the court should disallow imposition of bad faith penalties. Good faith is

determined by the reasonableness of nonpayment of a claim." Intl. Indemnity Co. v. Collins, 258 Ga. 236, 238(2), 367 S.E.2d 786 (1988). Courts have held that because the damages are in the nature of a penalty, the statute is strictly construed and the right to such recovery must be clearly shown. Williamson, supra, 220 Ga. at 325, 138 S.E.2d 668. A directed verdict is indicated where the insurer has reasonable grounds to contest the claim or the question of liability is close. Roland v. Ga. Farm Bureau, etc., 265 Ga. 776, 778(2), 462 S.E.2d 623 (1995) (doubtful question justified refusal to pay; directed verdict required).

In Moon v. Mercury Insurance Company of Georgia, 253 Ga. App. 506, 559 S.E.2d 532 (2002), the trial court granted the insurer's motion for summary judgment on the insured's bad faith claim on the ground there was a reasonable basis to contest the claim. In affirming judgment for the insurer, the Court of Appeals stated:

> To support a cause of action under O.C.G.A. § 33-4-6, the insured bears the burden of proving that the refusal to pay the claim was made in bad faith. A defense going far enough to show reasonable and probable cause for making it, would vindicate the good faith of the company as effectually as would a complete defense to the action. Penalties for bad faith are not authorized where the insurance company has any reasonable ground to contest the claim and where there is a disputed question of fact.

12

Id.

Under Georgia law, relying on an independent consultant's opinion has been held to provide a reasonable basis for an insurer's denial of a claim for payment as a matter of law. Haezebrouck v. State Farm Mutual Automobile Insurance Co., 216 Ga. App. 809, 455 S.E.2d 842 (1995); Worsham v. Provident Companies, Inc., 249 F. Supp. 2d 1325 (N.D. Ga. 2002). As a matter of law, it is reasonable for an insurer to deny a claim based on such activities unless the advice is patently wrong and the error was timely brought to the insurer's attention, or unless the advice is "in the nature of mere pretext for an insurer's unwarranted prior decision to [deny the claim]." Montgomery v. Travelers Home and Marine Ins. Co., 360 Ga. App. 587, 592, 859 S.E.2d 130, 135 (2021) (quoting Wallace v. State Farm Fire & Cas. Co., 247 Ga. App. 95, 97 n. 6, 539 S.E.2d 509 (2000). Furthermore, penalties for bad faith are not available where, as here, the insurance contract does not provide the coverage demanded and factual disputes remain involving coverage. Collins v. Life Ins. Co. of Ga., 228 Ga.App. 301, 304(3), 491 S.E.2d 514 (1997); Montgomery, supra.

In this case, reasonable grounds clearly existed for Charter Oak to contest Plaintiff's claim for coverage under the Policy. As previously demonstrated, Charter Oak relied not only on its own thorough investigation of the Loss, but also on the expert opinion of an independent consultant – senior industrial hygienist Cannon. Both Charter Oak's investigation. Cannon's inspection showed that the water and mold damage to Plaintiff's home was a long term, continuous, and repeated issue caused by the failure of the original polybutylene plumbing in Plaintiff's home. Charter Oak's claims adjuster observed evidence of long-term water leaks, rotting wood, and dark black mold in the Property during inspections and Cannon's investigation substantiated those observations as well as provided additional basis for the decision that the damage was occurring for months.

Plaintiff cannot assert that Cannon's opinion was patently wrong just because she believes otherwise. In addition, Plaintiff has produced no evidence to suggest that Cannon's opinion was based on a flawed process, failed to consider an important fact, or had any other defect that would suggest it was patently false. In fact, Plaintiff has not identified any <u>experts</u> or produced any expert opinions in this litigation disputing Charter Oak's position. [Doc. 28]. Accordingly, the cause of Plaintiff's damages is undisputed. Even if there was a dispute among experts

regarding causation, such a dispute would support that Charter Oak did not act in bad faith as a matter of law.

Thus, the record in this case shows that Charter Oak's denial of Plaintiff's claim was reasonable pursuant to the clear and unambiguous terms of the Policy excluding coverage and its expert's opinions. Plaintiff cannot, therefore, recover statutory bad faith damages pursuant to O.C.G.A. §33-4-6 as a matter of law.

### C. **There is No Evidence Supporting Plaintiff's Claim that there is a Diminution of Value of her Property as a result of a Covered Loss.**

In Count V of her Complaint, Plaintiff seeks damages asserting she has suffered a diminution of value of her home as a result of the Loss. Plaintiff's claim for diminution of value must fail because Plaintiff has not produced any evidence that (1) the Property suffered diminution of value and (2) that such diminution in value was caused by a covered cause of loss.

Under Georgia law, an insured may recover damages for a building's post-repair diminution in value. Royal Capital Dev., LLC v. Maryland Cas. Co., 291 Ga. 262, 267, 728 S.E.2d 234 (2012). The appropriate measure of damages for diminution in value is "the difference between pre-loss value and post-repair

value" of the building. State Farm Mut. Auto. Ins. Co. v. Mabry, 274 Ga. 498, 505, 556 S.E.2d. 114 (2001).

In this case, Plaintiff has completely failed to provide any evidence that the Property suffered diminution of value as a result of a covered loss. [Doc. 28]. At no time from the date of loss until the filing of this Motion has Plaintiff retain an expert to determine the value of the Property or the diminution in value of the Property as a result of a covered Loss. Without such evidence to support her claim, Plaintiff has failed to establish that an issue of material fact exists with regard to her diminution of value claim. Plaintiff cannot, therefore, recover damages as a matter of law.

## CONCLUSION

Based on the foregoing undisputed, Charter Oak is entitled to judgment as a matter of law on all of Plaintiff's remaining claims against it.

Respectfully submitted this 27th day of October, 2021.

DREW, ECKL & FARNHAM, LLP

*/s/ Karen K. Karabinos*
Karen K. Karabinos
Georgia Bar No. 423906

|  |  |
|---|---|
|  | */s/ Mary Alice Jasperse* |
|  | Mary Alice L. Jasperse |
|  | Georgia Bar No. 971077 |
| 303 Peachtree Street NE |  |
| Suite 3500 | *Counsel for Charter Oak* |
| Atlanta, GA 30308 |  |
| Phone: (404) 885-1400 |  |
| Fax: (404) 876-0992 |  |
| karabinosk@deflaw.com |  |
| jaspersem@deflaw.com |  |

# **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I have this date served a copy of **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** by filing it electronically with the Clerk of Court which will send notification of such filing to the below registered counsel electronically:

**Alexander Gray Hait**
**North Metro Litigators**
**185 Stockwood Drive, Suite 100**
**Woodstock, GA 30188**

**Ralph J. Villani**
**Villani Law Firm**
**821 Dawsonville Hwy, Suite 250-333**
**Gainesville, GA 30501-2634**

This 27th day of October, 2021.

DREW, ECKL & FARNHAM, LLP

*/s/ Karen K. Karabinos*
Karen K. Karabinos
Georgia Bar No. 423906

*/s/ Mary Alice Jasperse*
Mary Alice L. Jasperse
Georgia Bar No. 971077

*Counsel for Charter Oak*

303 Peachtree Street NE
Suite 3500
Atlanta, GA 30308
Phone: (404) 885-1400
Fax: (404) 876-0992

18