IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JANICE SCOTT,

    Plaintiff,

    v.

THE TRAVELERS HOME AND
MARINE INSURANCE COMPANY, et
al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:20-CV-4420-TWT

## OPINION AND ORDER

This is a breach of contract action. It is before the Court on the Defendant's Motion for Summary Judgment [Doc. 56]. For the reasons set forth below, the Defendant's Motion for Summary Judgment [Doc. 56] is GRANTED.

### I.  Background

This dispute arises out of a claimed breach of a homeowners insurance policy. The Defendant, The Charter Oak Fire Insurance Company ("Charter Oak"), issued the Plaintiff, Janice Scott, an insurance policy covering her home. (Def.'s Statement of Undisputed Material Facts in Supp. of Def.'s Mot. for Summ. J. ¶ 1.) This policy, Number 982221530 633 1 ("the Policy"), was in effect between November 14, 2017 and November 14, 2018. (Compl. at 18.) The policy contained the following exclusion:

We ensure against risks of direct physical loss to property

described in COVERAGE A and B, EXCEPT:
\*\*\*\*

C. WE DO NOT COVER:
\*\*\*\*

6. CONTINUOUS OR REPEATED SEEPAGE OR LEAKAGE OF WATER OR STEAM OVER A PERIOD OF TIME, WEEKS, MONTHS OR YEARS, FROM WITHIN A PLUMBING, DRAINAGE, HEATING, AIR CONDITIONING SYSTEM OR AUTOMATIC FIRE PROTECTIVE SPRINKLER SYSTEM OR FROM WITHIN A HOUSEHOLD APPLIANCE.

On September 28, 2018, water and mold damage occurred at the Plaintiff's home. (Def.'s Statement of Undisputed Material Facts in Supp. of Def.'s Mot. for Summ. J. ¶ 2.) The Plaintiff alleges that this damage occurred after several pipes burst over the period of about one week. (Compl. ¶¶ 10–11.) On October 4, 2018, the Defendant's claims representative Jeffrey Teitelbaum inspected the property and observed damage that appeared to be the result of long-term effects. (Def.'s Statement of Undisputed Material Facts in Supp. of Def.'s Mot. for Summ. J. ¶¶ 4–5.)[1] Teitelbaum informed the Plaintiff that

---

[1] Under this Court's Local Rules, the respondent to a summary judgment motion by respond to a movant's facts through "numbered, concise, nonargumentative responses[.]" N.D. Ga. Local R. 56.1(B)(2)(a)(1). The Plaintiff's responses frequently include arguments against the Defendant's facts but not arguments rebutting those facts. (*See, e.g.*, Pl.'s Responses to Def.'s Statement of Undisputed Material Facts ¶¶ 5, 13–14, 16.) Further, some of the Plaintiff's responses are not responsive to the specific fact alleged in the Defendant's Statement or only relate to a particular element of the Defendant's fact. (*See, e.g.*, *id.* ¶¶ 27–28.) Finally, the Plaintiff also responds to one fact by claiming they have insufficient knowledge and deny the fact without complying with Federal Rule of Civil Procedure 56(d). (*See id.* ¶ 24.) This practice violates the Local Rules, as well. *See* N.D. Ga. Local R. 56.1(B)(2)(a)(4). As such, this Court deems admitted Paragraphs 1–35 and 39–40 of the Defendant's Statement of Undisputed Material Facts.

because the damage was caused by "long[-]term, continuous, or repeated seepage or leakage of water, and therefore not covered under the Policy." (*Id.* ¶ 6.) The Plaintiff disagreed with this coverage denial and spoke with Craig Hite, an employee of the Defendant. (*Id.* ¶¶ 7–8.) Hite agreed with the denial but offered to have the home inspected again to allow for the Defendant to reconsider its coverage decision. (*Id.* ¶ 9.) The home was then inspected by Emergency Water & Fire Resources ("EWFR") representatives who concluded that previous damage to the subfloor was exacerbated by the water from the burst pipe. (*Id.* ¶¶ 10–11.) As a result of these findings, the Defendant notified the Plaintiff that she would be provided coverage as a result of the EWFR report in the amount of $5,178.61. (*Id.* ¶¶ 12–13.)

Several weeks later, a company hired by the Plaintiff sent the Defendant an estimate of $26,665.54 for mold remediation and demolition work. (*Id.* ¶ 14.) Because of the discrepancy between the Defendant's estimate and this new one, the Defendant sent Teitelbaum and another employee to inspect the Plaintiff's home again. (*Id.* ¶ 15.) Teitelbaum and his colleague determined that the damage was the result of a long-term leak and no further coverage would be provided. (*Id.* ¶ 16.) As a result, the Defendant notified the Plaintiff that it would honor the $5,178.66 estimate but provide no further coverage. (*Id.* ¶ 17.) Shortly thereafter, the Plaintiff's appraiser, Bruce Frederics, informed the Defendant that he had been retained by the Plaintiff, and she was demanding an appraisal because there was no agreement on an "Amount

of Loss." (*Id.* ¶¶ 18–19.) The Defendant contested this demand for appraisal, arguing it was premature as there was no dispute as to the cost to repair the covered damage in the Defendant's earlier estimate. (*Id.* ¶ 21.) A week later, Frederics returned an estimate to repair the damage of $118,637.13. (*Id.* ¶ 22.) Because another large discrepancy emerged, the Defendant retained Michael Cannon, an industrial hygienist, to investigate the nature of the leaks and damage to the property. (*Id.* ¶ 23.) From his investigation, Cannon concluded that the leaks were long-term ones and the damage resulted from these repeated leaks. (*Id.* ¶¶ 27–30.) With this report and his earlier investigation, Teitelbaum denied coverage for this damage on March 26, 2019. (*Id.* ¶ 34.) On June 24, 2019, the Plaintiff sent the Defendant a 60-day bad faith demand letter pursuant to O.C.G.A. § 33-4-6, and this suit followed. (*Id.* ¶ 35.) On March 26, 2021, this Court dismissed the Plaintiff's non-contractual claims, leaving the Plaintiff's Bad Faith claim under O.C.G.A. § 33-4-6 (Count I) and Diminution of Value claim (Count V). The Defendant now seeks summary judgment as to the Plaintiff's remaining claims.

## II.    Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court should view the evidence and draw any inferences in the light most favorable to the nonmovant. *Adickes v. S.H. Kress*

*& Co.*, 398 U.S. 144, 158–59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

### III. Discussion

The Defendant seeks summary judgment on the Plaintiff's two remaining claims, Bad Faith (Count I) and Diminution of Value (Count V). On the Plaintiff's O.C.G.A. § 33-4-6 Bad Faith claim, the Defendant argues that the undisputed evidence shows its coverage denial was based upon a reasonable interpretation of the Policy and the available data. (Def.'s Br. in Supp. of Def.'s Mot. for Summ. J., at 11.) The Defendant points to the inspections by Teitelbaum and Cannon as reasonable grounds for its coverage denial. (*Id.* at 13.) With regards to the diminution of value claim, the Defendant argues that the Plaintiff has failed to provide evidence that her property value has diminished or that such diminution was caused by a covered event. (*Id.* at 15.) The Court addresses each claim in turn.

#### A. Bad Faith Pursuant to O.C.G.A. § 33-4-6

Under Georgia law, insureds can bring claims against their insurers for refusal to compensate covered losses if that refusal was the product of bad faith. O.C.G.A. § 33-4-6. "Bad faith for purposes of [§ 33-4-6] is any frivolous

5

and unfounded refusal in law or in fact to pay according to the terms of the policy." *King v. Atlanta Cas. Ins. Co.*, 279 Ga. App. 554, 556 (2006). While the existence of bad faith is usually an inquiry for the jury, "when there is no evidence of unfounded reason for the nonpayment, or if the issue of liability is close, the court should disallow imposition of bad faith penalties." *Id.* at 557 (internal quotation marks omitted). "Penalties for bad faith are not authorized . . . where the insurance company has any reasonable ground to contest the claim and where there is a disputed question of fact." *Lawyers Title Ins. Corp. v. Griffin*, 302 Ga. App. 726, 731 (2010) (internal quotation marks omitted). Thus, to avoid summary judgment, the Plaintiff must have some evidence that the Defendant denied coverage without reason.

Here, the undisputed facts viewed in the light most favorable to Plaintiff do not indicate that the Defendant denied coverage in bad faith. After an initial inspection led Teitelbaum to conclude the leaks were long-term in nature, the Defendant scheduled a second inspection and offered coverage of $5,178.61. (Def.'s Statement of Undisputed Material Facts in Supp. of Def.'s Mot. for Summ. J. ¶¶ 4–13.) After the Plaintiff provided the Defendant with a much higher estimate from another inspector, Teitelbaum returned with a colleague and again concluded the damage resulted from a long-term leak. (*Id.* ¶¶ 14–16.) After receiving another estimate—this one nearly twenty-five times the Defendant's original estimate and five times the Plaintiff's previous estimate—the insurer sent a hygienist to inspect the damage, who also concluded that

damage was the result of a long-term leak. (*Id.* ¶¶ 22–32.) Because the Defendant's claim representative inspected the property multiple times and determined that the damage resulted from a long-term leak, the Defendant had at least one reasonable factual ground for denying coverage. To contest this finding, the Plaintiff points to evidence in the record to argue that Teitelbaum's conclusions were incorrect and that the event was covered under the terms of the Policy. (Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., at 3–6.) But whether this event was actually covered under the Policy is not the core inquiry of a bad faith claim. The relevant inquiry is limited to whether the Defendant had reasonable grounds to deny coverage, which it did. As a result, the Defendant is entitled to summary judgment on the Plaintiff's § 33-4-6 claim. *See Amica Mut. Ins. Co. v. Saunders*, 335 Ga. App. 245, 250 (2015) ("An insurer thus having any reasonable factual or legal ground for contesting a claim is entitled to summary judgment under either O.C.G.A. § 33-4-6 or § 33-4-7.")

B.  Diminution of Value

Georgia courts have authorized damages for the amount of diminution of value in cases alleging a breach of contract. *See Royal Capital Dev. LLC v. Maryland Cas. Co.*, 291 Ga. 262, 267 (2012). However, diminution of value is merely a category of damages, not an independent legal claim. *See, e.g., id.* ("[W]hether damages for diminution of value are recoverable under [the plaintiff's] contract depends on the specific language of the contract itself and

can be resolved through application of the general rules of contract construction.")[2] The Plaintiff has no remaining claims against the Defendant. Without an independent legal claim, the Plaintiff has no claim to diminution of value damages, and the Defendant is entitled to summary judgment as to Count V.

## IV. Conclusion

For the reasons set forth above, the Defendant's Motion for Summary Judgment [Doc. 56] is GRANTED. The Plaintiff has no remaining claims against the Defendant, and the Clerk is DIRECTED to close the case.

SO ORDERED, this   11th   day of March, 2022.

                                                *Thomas W. Thrash*
                                              THOMAS W. THRASH, JR.
                                              United States District Judge

---

[2] The Plaintiff's Complaint reinforces this understanding, alleging that because the Defendant "has failed to fully indemnify Plaintiff for her covered losses, Plaintiff has suffered additional damages and a diminution of value of at least $20,000.00" (Compl. at 11.) The Plaintiff also fails to identify elements to any independent "diminution of value" claim.